PETREY, APPELLANT, *v.* SIMON, APPELLEE.

[Cite as Petrey *v.* Simon (1983), 4 Ohio St. 3d 154.]

(No. 82-270—Decided April 20, 1983.)

*Messrs. Greet & Fisse* and *Mr. Lawrence R. Fisse,* for appellant.

*Simon, Anninos & Namanworth Co., L.P.A., Mr. Eli Namanworth* and *Ms. Eve Biskind Klothen,* for appellee.

LOCHER, J. Civ. R. 12(B) provides, in part: "When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56." In this case, the court of common pleas expressly relied on appellee's affidavit. The court of appeals, therefore, correctly concluded that the disposition of this case had actually been a summary judgment rather than a dismissal.

I

Civ. R. 12(B) further provides: "All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." Appellant argues, however, that he did not have a "reasonable opportunity to present" pertinent materials, because the court of common pleas did not notify him that it would convert appellee's motion to dismiss into a motion for summary judgment. We agree. "If the conversion occurs unexpectedly, the non-moving party is left at the disadvantage of being unprepared to respond; hence notice is required. * * * The primary vice of unexpected conversion to summary judgment is that it denies the surprised party sufficient opportunity to discover and bring forward factual matters which may become relevant only in the summary judgment, and not the dismissal, context." (Citation omitted.) *Portland Retail Druggists Assn.* v. *Kaiser Found. Health Plan* (C.A. 9, 1981), 662 F. 2d 641, 645, analyzing comparable provisions in Fed. R. Civ. P. 12(b).[1]

---

[1] Our holding today coincides with those of most of the federal circuit courts of appeals. See, *e.g., Gould, Inc.* v. *Chafee* (C.A.D.C. 1971), 450 F. 2d 667, 669; *Dale* v. *Hahn* (C.A. 2, 1971), 440 F. 2d 633, 638; *Crown Central Petroleum Corp.* v. *Waldman* (C.A. 3, 1980), 634 F. 2d 127, 129; *Davis* v. *Zahradnick* (C.A. 4, 1979), 600 F. 2d 458, 460; *Oaxaca* v. *Roscoe* (C.A. 5, 1981), 641 F. 2d 386, 392; *Kistner* v. *Califano* (C.A. 6, 1978), 579 F. 2d 1004, 1006; *Chicago-Midwest Meat Assn.* v. *Evanston* (C.A. 7, 1978), 589 F. 2d 278, 282, certiorari denied (1979), 442 U.S. 946;

A comparison of the standard for reviewing motions to dismiss for failure to state a claim with that for reviewing motions for summary judgment demonstrates the importance of providing notice to the parties. "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ. R. 12[B][6]), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. (*Conley* v. *Gibson* [1957], 355 U.S. 41, followed.)" *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223].

Although the court considers the sufficiency of the complaint before ruling on a Civ. R. 12(B)(6) motion, a motion for summary judgment requires the court to examine the "evidence." See Civ. R. 56(C); *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327 [4 O.O.3d 466]. "* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Civ. R. 56(E). The risk of judgment on the merits is a severe consequence. Parties deserve a reasonable opportunity to demonstrate whether a genuine issue of fact exists. Notice is a negligible burden whose virtues outweigh the "vice of unexpected conversion."

## II

Civ. R. 12(B) also requires that "the motion shall be * * * disposed of as provided in Rule 56." Civ. R. 56(C) provides, in part: "The motion shall be served at least fourteen days before the time fixed for hearing." Commentators on the comparable provision in Fed. R. Civ. P. 56[2] have noted the im-

---

*Winfrey* v. *Brewer* (C.A. 8, 1978), 570 F. 2d 761, 764; *Portland Retail Druggists Assn.* v. *Kaiser Found. Health Plan* (C.A. 9, 1981), 662 F. 2d 641, 645; *Franklin* v. *Oklahoma City Abstr. & Title Co.* (C.A. 10, 1978), 584 F. 2d 964, 967; *Newman Oil Co.* v. *Atlantic Richfield Co.* (Temp. Emer. Ct. App. 1979), 597 F. 2d 275, 278, certiorari denied (1979), 444 U.S. 842. Likewise, several courts of last resort have construed similar provisions as requiring notice. See, *e.g.*, *Hales* v. *First Natl. Bank of Mobile* (Ala. 1980), 380 So. 2d 797, 799; *Bernay* v. *Sales* (D.C. App. 1981), 435 A. 2d 398, 402, at fn. 4; *Nadeau* v. *State* (Me. 1978), 395 A. 2d 107, 115; *White* v. *Peabody Constr. Co.* (1982), 386 Mass. 121, 434 N.E. 2d 1015, 1018-1019; *State, ex rel. Dept. of Health and Environ. Sciences,* v. *Livingston* (1976), 169 Mont. 431, 435-436, 548 P. 2d 155; *Bekins Bar V Ranch* v. *Utah Farm Prod. Credit Assn.* (Utah 1978), 587 P. 2d 151, 152; *Bennett Estate* v. *Travelers Ins. Co.* (1980), 138 Vt. 189, 191, 413 A. 2d 1208; *Kimbley* v. *Green River* (Wyo. 1982), 642 P. 2d 443, 445. Two reported Ohio cases have the same holding. See *W.D.G., Inc.* v. *Mutual Mfg. & Supply Co.* (Franklin App. 1976), 5 O.O. 3d 397, 399; and *Fraternal Order of Police* v. *D'Amico* (1982), 4 Ohio App. 3d 15.

[2] Our conclusion regarding the application of the time requirement in Civ. R. 56(C) is the same as that reached by several federal circuit courts. See, *e.g., Crown Central, supra,* at 129; *Oaxaca, supra,* at 391-392; *Dayco Corp.* v. *Goodyear Tire & Rubber Co.* (C.A. 6, 1975), 523 F. 2d 389, 392; *Winfrey, supra,* at 764; *Adams* v. *Campbell Cty. School Dist.* (C.A. 10, 1973), 483 F. 2d 1351, 1353. Likewise, some state courts of last resort have answered this question similarly. See, *e.g., Hales, supra,* at 799; *Nadeau, supra,* at 115-116.

portance of this requirement: "* * * In theory, the additional time ought to produce a well-prepared and complete presentation on the motion to facilitate its disposition by the court. In addition, since opposition to a summary judgment motion often is a difficult task, usually involving preparation of both legal and factual arguments as well as affidavits, and since the results of failure are drastic, it is felt that the additional time is needed to assure that the summary judgment process is fair." 10A Wright, Miller & Kane, Federal Practice and Procedure (1983) 6-7, Section 2719. The fairness of this additional time is no less important when the motion for summary judgment is a converted motion to dismiss for failure to state a claim.

Accordingly, we reverse the judgment of the court of appeals and remand the cause for further proceedings consistent with this opinion.[3]

*Judgment reversed*
*and cause remanded.*

SWEENEY, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C.J., and W. BROWN, J., dissent.

J.P. CELEBREZZE, J., not participating.

CELEBREZZE, C.J., dissenting. Inasmuch as the majority reverses the judgment of the court of appeals on a theory neither raised by the parties nor considered by any court below and fails to address the issue squarely presented in this appeal, I must respectfully dissent.

---

[3] We express no opinion, however, as to: (1) whether appellee acted with immunity from suit by appellant, (2) whether the entry of summary judgment by the trial court was appropriate on the merits, and (3) whether dismissal under Civ. R. 12(B)(6) would be appropriate under the present posture of this case.

Rather, we note that appellant specifically raised the issue of notice regarding the conversion of a motion to dismiss to a motion for summary judgment at page 16 of his brief in this court: "Rule 12(B)(6) of the Ohio Rules of Civil Procedure, places an affirmative duty upon the Court in matters where a Motion to Dismiss for failure to state a claim is made, and where such Motion presents 'matters outside the pleading,' to 'consider only such matters outside the pleadings as are specifically enumerated in Rule 56.' Further, all parties are to be given reasonable opportunity to present materials made pertinent to the Motion by Rule 56. This requires advance notice that the Motion will be treated as a Motion for Summary Judgment under Rule 56 (see *W.D.G., Inc.* v. *Mutual Manufacturing and Supply Company* (1976), 5 O.O. 3d 397; *Adams* v. *Campbell County School District* (U.S.C.A. 10, 1973), 483 F. 2d 1351, 1353, interpreting the requirements of the Federal Rules of Civil Procedure, Rule 12(b) and holding that simple presence of Affidavits does not constitute notice that a Rule (b)(6) Motion will be treated as a Motion for Summary Judgment because 'under Rule 12(b)(6) the Court could have excluded the Affidavits from consideration.' " Appellee responded to these assertions with his fourth proposition of law and accompanying arguments at pages 23(a) *et seq.* Furthermore, the court of appeals dealt in its opinion at pages 7-8 with the relationship of Civ. R. 12(B) and 56(C) on which we base this decision.

The real issue presented to this court is whether an attorney is immune from liability to third persons while representing a client and acting within the authority granted by the client. I would affirm the judgment of the court below and hold that, under the circumstances of the case at bar, appellee is immune from liability in the suit brought by appellant. The following facts as set forth in the pleadings obliged this dissent.

Appellant alleged that appellee was contacted by one Ruth Petrey who hired appellee to collect back child support from William Petrey, Ruth Petrey's ex-husband. Ruth Petrey provided appellee with what she believed to be William Petrey's Social Security number, and informed appellee that William Petrey was supposedly working at the Ford Motor Co. Appellee proceeded to file a "motion to show cause" in the Domestic Relations Division of the Court of Common Pleas of Butler County against William Petrey, a.k.a. Chester Petrey, in an attempt to recover the back child support owed to Ruth Petrey. This motion was served on Chester Petrey at his residence which was also the residence of Levi Petrey, the appellant. Appellee was contacted by an attorney representing Chester Petrey and was told that neither Chester Petrey nor Levi Petrey was the William a.k.a. Chester Petrey named in the motion. However, at the scheduled hearing on the motion, neither Chester nor Levi Petrey appeared, through counsel or otherwise, to establish that he was not the correct party.

At the hearing, appellee learned that Ford Motor Co. employed a Levi Petrey whose Social Security number *differed only in one digit from the Social Security number believed to belong to Ruth Petrey's ex-husband.* Appellee then obtained an order of assignment of Levi Petrey's wages in the amount of $135 per week believing that Levi Petrey was William Petrey, Ruth Petrey's ex-husband. After procuring this wage assignment, appellee was contacted over the telephone by an attorney representing Levi Petrey and was told that Levi Petrey was not Ruth Petrey's ex-husband. Appellee responded that, in order to drop the wage assignment, he would require evidence that Levi Petrey was not the correct party, including birth certificates, marriage certificates, and photographs. It was not until after Levi Petrey's wages had been assigned for eleven weeks in the total amount of $1,485 that Levi Petrey established he was not Ruth Petrey's ex-husband. Being satisfied that Levi Petrey was not the correct party, appellee voluntarily dissolved the wage assignment.

Levi Petrey instituted this action against appellee alleging abuse of process, malicious and wrongful attachment, invasion of privacy, and intentional infliction of emotional distress. In the trial court and court of appeals, appellee successfully argued that he was immune from liability for acts performed on behalf of his client, absent malice. I agree.

I propose that this case be decided upon an application of the general rule that an attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client

or the attorney acts maliciously. See *W.D.G., Inc.* v. *Mutual Mfg. & Supply Co.* (Franklin App. 1976), 5 O.O.3d 397.

I believe the public policy behind this rule is sound and compelling. An attorney owes a primary duty to his client and must act accordingly. In a real sense, this principle is legally enforceable in light of the Code of Professional Responsibility. Specifically, EC 5-1 states:

"The professional judgment of a lawyer should be exercised, within the bounds of the law, *solely* for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, *nor the desires of third persons* should be permitted to dilute his loyalty to his client." (Emphasis added.)

Were the rule otherwise, an attorney would be faced with a sharp conflict of interest. On one hand, the attorney must have an interest in promoting and protecting the interests of his client. On the other hand, if no such immunity exists, an attorney may be reticent to advance the cause of his client out of fear of lawsuits by third persons arising out of the attorney's representation of his client. This proposition was well stated in *Petrou* v. *Hale* (1979), 43 N.C. App. 655, 260 S.E. 2d 130, at 661:

"* * * If an attorney whose primary duty is to promote the cause of his client in a light most favorable to him within the bounds of the law is also required to protect the rights of an adverse party, he will be caught in the midst of a conflict of interest. More importantly, if mere negligence in protecting the rights of an adverse party becomes the standard of liability, attorneys will be fearful of instituting lawsuits on behalf of their clients. The end result would be the limitation of free access to the courts."[4]

Viewing the forestated facts in a light most favorable to appellant, I would find that the pleadings do not sufficiently allege malice or bad faith on the part of the appellee. Appellant's complaint alleges only the prudent actions of a competent attorney representing his client within the bounds of the law. Until appellant appeared and established that he was not the correct party, for all appellee knew Levi Petrey was William Petrey given the unusual circumstances of this case. Moreover, it would appear that appellant expected appellee to dissolve the wage assignment solely upon the oral representation that Levi Petrey was not the correct party even though neither Chester nor Levi Petrey nor their attorney bothered attending the hearing on the motion to show cause after having been properly served with notice. Reasonable minds could not differ that appellee, given the facts known to him, was under no obligation to act any differently.

It is my view that, in light of the pleadings, no sufficient allegation of malice was raised by appellant which would warrant a trial of that factual issue.

---

[4] See, generally, cases collected in Annotation, 27 A.L.R. 3d (1969) 1113, Sections 9-15; Annotation, 45 A.L.R. 3d (1972) 1181, Sections 3-4; Annotation, 97 A.L.R. 3d (1980) 688.

I must also emphasize that this dissenting opinion should not be construed as disagreeing with the law as stated by the majority. Given the case where the issue addressed by the majority is properly and fairly presented, I will cast my vote accordingly. The issue which the majority should have addressed was not addressed. Accordingly, for the foregoing reasons, I would affirm the judgment of the court below.

W. BROWN, J., dissents.